STEPHEN F. GALE, Appellant, *v.* PHILIP DEAN, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

Where a party agreed, without any time being specified, to procure a deed to a piece of land from another person, and failed to perform, the measure of damages will be the value of the land at the time the person for whom the title was to be obtained, was notified that it could not be procured.

Where interviews were had by a third person, with the contracting parties, in relation to procuring said deed, the statements made to such third party and by him communicated to those in interest, may be considered as having been made directly to them.

ON the 7th day of August, 1857, the appellee commenced an action of assumpsit against the appellant, in the Cook County Court of Common Pleas. The declaration contained two counts. The first count set forth in *hæc verba*, the following contract, to wit :

CHICAGO, MAY 17, 1851.

Received of Philip Dean, the sum of seven hundred and fifty dollars, as follows : James H. Rees' judgment note, payable in thirty days from May 12, 1851, to the order of said Dean, and indorsed by him for six hundred dollars, and in cash one hundred and fifty dollars, being in full for sale of tax certificate on sub-lot 9, of lots 2, 3 and 4, of block 84, in school section addition to Chicago, the undersigned

agreeing to obtain a deed by quit-claim or otherwise, for one-half of said sub-lot 9, of H. L. Tuller, or such other party as may have the title to the half part of said lot, formerly conveyed to the said H. L. Tuller.        STEPHEN F. GALE.

And alleged a demand on the 10th day of April, 1857, upon the appellant for the deed mentioned in the contract, a readiness on the part of the appellee to receive the same, and a neglect on the part of the appellant to make or obtain such deed.

The second count sets out the above contract according to its legal effect, averring that the appellant was thereby bound to procure such deed within a reasonable time, which he had neglected to do. To this declaration the plea of the general issue was interposed and a trial was had by jury, before J. M. WILSON, Judge.

On the trial it appeared in evidence that the contract set forth in the declaration, and another agreement between the parties of the same date, were executed at the same time, both of which were offered in evidence. The latter agreement was as follows:

MEMORANDUM OF AGREEMENT, entered into this seventeenth day of May, A. D. 1851, between Stephen F. Gale, party of the first part, and Philip Dean, party of the second part, both of the city of Chicago, and State of Illinois. Whereas, the party of the first part, did, on the 1st day of May, A. D. 1840, purchase at the city tax sale, sub-lot nine, of lots 2, 3 and 4, in block 84, in the school addition to Chicago, and whereas, from an examination of the records, and from other information obtained, the fee title appears to be held by H. L. Tuller and Amos C. Hamilton. And whereas, the party of the first part, has this day sold to the party of the second part, his tax certificate on said lot 9, upon the following conditions, viz. : that the said Amos C. Hamilton or his heirs may have the privilege of redeeming, or receiving an assignment from the said Dean, or by quit-claim deed, one-half part of said sub-lot 9, upon condition that the said Amos C. Hamilton, or his heirs, pay unto the said Dean, one hundred dollars within six months from this date.                                        STEPHEN GALE.
                                        PHILIP DEAN.

The appellee moved to strike out the evidence, on the ground of a variance between the declaration and the proof offered in support of it, which motion was overruled.

It not only appeared in evidence, but was admitted, that the appellant, in making the contract, acted in good faith, and did not act in bad faith in his failure to perform the same, but that the failure to perform the contract on his part arose from his inability to procure the title.

It appeared in evidence that the appellee demanded a performance of the contract in the winter or spring of 1857, and that the appellant had never performed the same.

The appellant introduced in evidence a letter from Tuller to

him, dated May 15, 1851, in which Tuller says he is in hopes soon to have the title papers of the half lot, and that as soon as he got them he would bring or send them to Chicago, and would then settle the matter to the appellant's satisfaction.

It also appeared in evidence that the value of one-half of said sub-lot 9, was, in May, 1851, $650 ; in the fall of 1851, $800 to $900 ; in January or February, 1852, $1,000 ; and in the fall of 1856, and winter and spring of 1857, $7,500. That the property was improved in May, 1851, at which time the appellee entered into possession, and that he had remained in possession ever since. That said sub-lot was conveyed by tax deed to appellee in 1851, that the tax title at the time of the sale was considered worth about $200.

It further appeared in evidence that James H. Rees was present when the contract was made, and having a desire to see it carried out, frequently saw the appellant after that time about procuring a deed from Tuller. That the appellee knew that Rees frequently talked with appellant about getting such deed, and that Rees was accustomed to tell the appellee what the appellant said at these interviews, although Rees had no particular authority to act for the appellee, and could not say that he acted at his instance. At one of these interviews, shortly after the contract was made, and within six months from that time, the appellant told Rees that he could not procure the deed from Tuller ; that Tuller refused to give a deed ; which conversation Rees shortly after communicated to the appellee.

The appellant asked the court to instruct the jury that the measure of damages should, under the circumstances, be the consideration money and interest.

Or, if the court was of opinion that such was not the true rule of damages, then that the contract was to be performed within a reasonable time from making it, and the measure of damages should be the value of the premises after the lapse of such reasonable time, and interest thereon.

Or if the court was of opinion that neither of these rules were correct, then that the measure of damages should be the value of the premises when the appellee had notice that the appellant could not perform his contract, with interest thereon. But the court refused to instruct the jury as requested, and instructed them that the measure of damages should be the value of the property when the demand was made in 1857. The jury found a verdict for the appellee for $7,500.

HOYNE, MILLER & LEWIS, and BECKWITH & MERRICK, for Appellant.

SCATES, MCALLISTER & JEWETT, for Appellee.

CATON, C. J.   The court properly decided that there was no variance between the contract declared on and the one offered in evidence.

The measure of damages, in this case, was not the value of the land when the contract was made, but its value at the time of the breach of that contract.   Here no time was specified when the title from Tuller should be obtained.   That portion of the contract on which the breach is assigned, is in these words: " the undersigned agreeing to obtain a deed by quit-claim, or otherwise, for one-half of said sub-lot 9, of H. L. Tuller, or such other party as may have the title to the half part of said lot formerly conveyed to said H. L. Tuller."   The party did not claim to have the title himself, nor was he to make the conveyance. He agreed to procure the title from another, and without any specification of time within which it should be done.   This gave to Gale a reasonable time within which to procure the conveyance. On the one side it was insisted, that the contract was broken after the expiration of a reasonable time, though both parties remained passive ; while on the part of Dean it was insisted, that there could be no breach until he had requested Gale to perform and he had thereupon failed or refused to do so.   We think neither of these positions is correct.   We do not think that Gale, when he found he could not perform, was absolutely at the mercy of Dean, for the determination of the time when his liability should be fixed, and the measure of that liability determined.   We think, after the expiration of a reasonable time, and after making all reasonable efforts to procure the conveyance from Tuller, without avail, that it was the right of Gale to notify Dean that he could not perform the contract, and thus, by his own affirmative act, create a breach and determine the time when the value of the land should be estimated, to establish the measure of damages which he was bound to pay, for the breach of the agreement.   Until such notice was given, Dean had a right to believe that the contract would be performed, and to make improvements and enjoy the premises, in view of that supposition ; but when he was notified that Gale could not perform the contract, by procuring the title, he was no longer at liberty to act as if it was to be performed, and if he made further improvements, or did other acts, on the assumption that it would be performed, he did them in his own wrong, and could not use them to enhance his damages.   This is in accordance with those principles of reason and justice which characterize the common law.   We should never so construe a contract as to give one party an unfair or an unreasonable advantage over another, unless such was the manifest intention of the parties at the time it was made.   We cannot presume here that it was the intention

of either party, at the time the contract was made, in case Gale should be unable to procure the conveyance from Tuller, that it should be left entirely to Dean's discretion to postpone the time at which the value of the property should be taken for the purpose of fixing the measure of his damages, and that Gale should be obliged to stand by, dumb and powerless to act, and see the property rising in value, till it had arisen, as in this case, more than one thousand per cent., and then be obliged to respond in damages to the full enhanced value of the property. When the contract was made, both parties knew that it was uncertain whether it would be possible for Gale to perform or not, and it is not reasonable to suppose that Gale thought he was receiving, or that Dean believed he was paying, a consideration adequate to such a contingent liability, in case it should be impossible for Gale to perform. It is one of the cherished objects of the law to maintain a reciprocity between the parties to contracts, wherever that can be done without doing violence to the language used. It is just as unreasonable, and there is just as great a want of reciprocity, in allowing Dean to hold on indefinitely, before fixing the time for declaring the breach, in case he saw the property appreciating in value, as there would be in allowing Gale to do the same thing in case he saw the value of the property depreciating. A just sense of reciprocity must require that either of the parties, after the lapse of a reasonable time, might declare a breach of the contract, if not performed; the one party by demanding performance and declaring it broken if it is not performed, and the other party by giving notice that he could not perform.

There was evidence tending to show such a determination and breach of the agreement by Gale, after the lapse of a reasonable time to perform, if that had been possible; and it was admitted on the trial that Gale had acted in good faith throughout, and it should have been left to the jury to say whether there had been such determination and breach by Gale. With a view to this, his counsel asked the court to instruct the jury as follows: "If the jury shall believe, from the evidence, that the witness, James H. Rees, had interviews with the defendant, at the instance of the plaintiff, in relation to the procuring of the quit-claim deed referred to in the contract given in evidence, then the statements made by the defendant to said Rees, at these interviews, and by him communicated to the plaintiff, are to be considered by the jury as having been made by the defendant to the plaintiff; and if the jury shall believe that the defendant did not act in bad faith, either in making the contract or in failing to perform the same, and that the plaintiff, in the manner above stated, was informed of defendant's inability to procure said quit-claim deed, then the measure of damages in this case will not exceed the

value of the premises to be conveyed by said deed, at the time when such communication was made to the defendant, with interest thereon at six per cent. per annum, to the present time." This instruction the court refused to give, but, on the contrary, instructed that the measure of damages was the value of the land at the time Dean demanded the performance and Gale's non-compliance with such demand; to which rulings exceptions were taken. In this we think the court erred. The judgment must be reversed and the cause remanded.

*Judgment reversed.*