# SUPREME COURT

OF

# ILLINOIS.

## THIRD GRAND DIVISION.

### APRIL TERM, 1866.*

THE CHAMBER OF COMMERCE OF THE CITY OF CHICAGO

*v.*

JOHN SOLLITT.

1.  CONTRACT—*failing to comply with.* If one party to an executory contract induces the other to believe that he has withdrawn from the contract, the other contracting party need not wait until the day of performance before making new arrangements ; nor does he lose his remedy against the delinquent party by providing at once against losses likely to arise from such delinquency.

2.  Hence, where a carpenter had contracted to construct the wood work of a building at a stipulated price, and at a fixed time, and before the time arrived for him to begin, he wrote to the other party announcing his entire inability to perform, except on certain new conditions. They were not bound to wait until the arrival of the very day for his commencement of the work, before providing for the contingency of his failure.

---

* The following case was unavoidably omitted from the reports of the term at which it was decided.

3. And where, in such a case, the other party at once notified the carpenter that they should not accede to his new conditions, but should contract with other parties, and charge the losses to him, and he remained silent, making no objection, and showing no willingness to proceed with the work himself, they were fully justified in treating the contract as abandoned by him.

APPEAL from the Superior Court of Chicago; Hon. JOHN A. JAMESON, Judge, presiding.

This was an action of assumpsit brought by the Chamber of Commerce against Sollitt, for damages for the non-performance of a contract for the carpenter work on a building. This contract was made June 30, 1864. On the 13th of July, following, Sollitt notified the building committee of his entire inability to comply with his contract, in a letter which appears at length in the opinion. The committee at once informed him that they should hold him responsible on his contract; that letter is also quoted in the opinion. The action was for damages for the non-performance of the contract. There was a plea of the general issue, a trial by a jury, and a verdict.

Messrs. ARRINGTON & DENT, for the appellant.

1. This case rests on the legal principle, now thoroughly established, that, where one party to a contract gives notice that he will not or can not perform it, the other party may take him at his word, and employ others to perform the same service, and hold the party in default responsible. *Cort* v. *Ambergate, etc.*, R. W., 6 Eng. Law & Eq. 230; *Planche* v. *Colburn*, 8 Bingh. 14; *Masterson* v. *Mayor of Brooklyn*, 7 Hill, 61. But especially see *Hockster* v. *De Latour*, 20 Eng. Law & Eq. 157.

2. The silence of Sollitt was an acquiescence in the construction which the plaintiff put upon his previous notice of refusal, as well as in the line of conduct which the plaintiff declared an intention to adopt in relation to the refusal. 1 Greenl. Evid. 197.

Messrs. SCAMMON, McCAGG & FULLER, for the appellee.

Having re-let the work before the defendant, as the jury decided, refused or neglected to perform it, the plaintiff has

no cause of action. 2 Pars. on Cont. (new ed.) 677–679, and notes.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The Chamber of Commerce of Chicago employed Sollitt to do the carpenters' work on their building. Before the time had arrived for commencing work, he addressed to them the following letter:

"CHICAGO, July 13, 1864.
"Gentlemen of the Building Committee,
    "Chamber of Commerce —
"It is with the deepest regret, that I am obliged, from the force of circumstances, to announce to you my entire inability to proceed with my contract for Chamber of Commerce building as the matter now stands, which is briefly thus:

"In a very short time after I had signed the contract for the work, and before I had time to purchase any lumber for it, or even to make arrangement for doing so, lumber advanced in value $3 or $4 per M., and is now $5 higher on an average than it was at that time, making an absolute loss to me of fully $3,500 in that article alone.

"I do not wish to be understood as declining to go on with the work, as I intend always to fulfil my contracts both in letter and spirit; but under the present extraordinary state of public affairs, and knowing my own inability to fulfil it without some assistance from you, I make bold to ask of you to make good to me the loss I shall sustain on the lumber, which is clearly, to my mind, $3,500. This sum will, beyond all question, if public affairs remain as they now are, be a dead loss to me, and, with the risk I assume in the other parts of the work, places me in a very peculiar situation.

"I would therefore respectfully ask of you, gentlemen, that you advance me the sum of three thousand five hundred dollars, to enable me to purchase the lumber, and if no improvement in public affairs should take place until the work is finished, that

you consider said advance as a part of the contract, making the sum to be paid me $45,500.

"Hoping you will give the above matter your favorable consideration,

"I remain, gentlemen,

"Yours very respectfully,

"JOHN SOLLITT."

To this letter they replied as follows:

"CHICAGO, July 13, 1864.

"JOHN SOLLITT, ESQ.:

"DEAR SIR—I am desired, by the Chamber of Commerce, to notify you that your communication of this date to them was duly received and considered, and unanimously rejected.

"Also, I am directed by them to notify you, that you proceed with the work, according to the terms of the contract made by you with the Chamber of Commerce. And in the event of your neglect so to do, to procure the work to be done, and the materials to be purchased by other parties, charging the expenses thereof to you.

"I am, respectfully,

"EDWARD BURLING,

"*Architect for Chamber of Commerce.*"

The architect saw Sollitt almost daily after delivering to him this note, but he never manifested any willingness or readiness to proceed with the work. A few days after, by the direction of the appellants, the architect made a contract with new builders. Sollitt was told of this by the architect, and made no objection, nor did he offer to proceed with his contract; and before this, when told by the architect, verbally, that the Chamber would not entertain his communication, he said he could not go on with the work.

It can not with any reason be insisted, that the appellants were under obligation to wait until the arrival of the very day for the commencement of appellee's work, before providing for the contingency of his failure. This might have involved them in great

delay and expense.    They had received a letter from him emphatically announcing his entire inability to perform, except on certain new conditions.    This letter, notwithstanding the qualifying phrase at the beginning of the third paragraph, they were authorized as prudent men to regard as indicating an intention to abandon the contract.    When they replied, declining to accede to his proposed conditions, and advising him that they should contract with other parties and charge the losses to him, and he remained silent, making no objection to their contracting with others, nor manifesting any willingness to proceed with the work himself, they were fully justified in treating his course as a withdrawal from the contract.    If he knew, that in consequence of his first letter to them, and his failure to reply to their note declining his new conditions, they were about entering into a new contract, at an advanced price, with other builders, and if he really intended to go on with his contract under its original terms, good faith required that he should at once make known such intention to the appellants.    If he failed to do so, and permitted them to act on the belief, induced by himself, that he would not perform, he can not now be permitted to insist that he was ready to perform, or that the contract was rescinded by consent.    All this is undoubted law, and the sixth instruction for plaintiff, which substantially embodies it, should have been given.    If one party to an executory contract induces the other to believe that he has withdrawn from the contract, the other contracting party need not wait until the day of performance before making new arrangements, nor does he lose his remedy against the delinquent party by providing at once against losses likely to arise from such delinquency.    *Cort* v. *Ambergate*, 6 Eng. L. and Eq. 230; *Hockster* v. *De Latour*, 20 ib. 157; *Planche* v. *Colburn*, 8 Bing. 14; *Fox* v. *Kitton*, 19 Ill. 517.

*Judgment reversed.*