## L. J. KADISH *et al.*

*v.*

## A. N. YOUNG *et al.*

*Filed at Ottawa November 20, 1883.*

1. MEASURE OF DAMAGES—*refusal to complete purchase and pay for goods.* In ordinary cases of contracts for the sale of personal property for future delivery, where the purchaser fails to receive and pay for it at the stipulated time, the measure of damages is the difference between the contract price and the market or current value of the property at the time and place of delivery, and this rule is not affected by notice to the seller by the buyer before the day of delivery that he will not receive the property, unless the seller, upon receiving such notice, shall elect to then terminate the contract.

2. The price paid by the seller for an article by him sold and contracted to be delivered in the future, is not a circumstance to be taken into con-

sideration by the jury in determining the amount of damages the seller is entitled to recover upon the buyer's refusal to receive and pay for the property; and evidence of what the property cost the seller, is irrelevant and immaterial.

- 3. CONTRACT OF SALE—*notice by purchaser to renounce the contract—rights of the respective parties.* Where a buyer of grain, before the time for delivery repudiates the contract, and gives the seller notice of that fact, the latter may act on such notice and treat the contract as ended, and bring his action at once for a breach of the contract, or he may disregard such notice and await the time when the contract is to be performed, and then hold the buyer responsible for all the consequences of non-performance. But in this latter case he keeps the contract alive for the benefit of the other party as well as his own.

4. While a contract is still subsisting the parties can only be compelled to do that which its terms require. The purchaser, by notice that he renounces the contract, can not impose a duty on the seller to sell the property before the time fixed for its delivery, to protect the former from loss, or even to have it ready for delivery before the time fixed by the contract for delivery.

5. If a party contracting to sell grain for future delivery is notified by the purchaser, some time before the day provided for delivery and payment that he renounces the contract, and the seller at that time has the grain on hand ready for delivery, and acts upon the notice of repudiation, and accepts and treats the contract as then broken, it will doubtless be the duty of the seller to make a re-sale within a reasonable time, and give the buyer credit for the proceeds of the sale.

PARTY PLAINTIFF—*in suit against purchaser on refusal to complete contract.* Where a party who has contracted to sell grain, to be delivered at a future time, for a given sum per bushel, before the time for delivery buys a lot of grain to enable him to deliver the amount sold, for which he agrees to pay one dollar a bushel certain, and one dollar and twenty cents if he can recover the contract price of the purchaser, it was *held*, in a suit against the purchaser on refusal to receive and pay for the grain, that it in no manner concerned him how much the plaintiff paid for the grain he bought, and that the parties from whom he bought the grain were not necessary parties plaintiff, as they had no privity of contract with the defendant.

7. INSTRUCTION—*on the theory of the parties, respectively.* Where a custom is claimed on one side to exist in relation to contracts after the sale of grain for future delivery, which is denied by the other party, and there is evidence both ways, there is no error in instructing the jury, for the party denying the existence of such custom, with reference to the obligations and duties of the parties under the contract to make no mention of such custom; and in instructing for the other party, it is proper for the court to include therein the hypothesis of the custom being proved.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit, brought by A. N. Young and George Bullen, against L. J. Kadish and Charles Fleischman. A trial was had, resulting in a verdict and judgment of $20,000 damages against the defendants.

Mr. JOHN WOODBRIDGE, and Mr. FRANCIS LACKNER, for the appellant Kadish:

The refusal of Kadish, on December 16, to proceed, was of itself a breach of the contract, and damages should have been assessed as of that date. *Danforth* v. *Walker*, 37 Vt. 243; *Gale* v. *Dean*, 20 Ill. 320.

Damages are to be assessed, as a general rule, as of the day when the cause of action accrues. If the notice of renunciation creates a cause of action, damages are to be assessed as of the day of such notice. *Phillpotts* v. *Evans*, 5 M. & W. 475; *Hochster* v. *De La Tour*, 2 E. & B. 678; *Danube and Black Sea Co.* v. *Zenos*, 12 C. B. (N. S.) 825; *Avery* v. *Bowden*, 5 E. & B. 714; *Reid* v. *Hoskins*, 6 id. 953; *Banich* v. *Beebe*, 2 C. B. (N. S.) 563.

Where one party gives notice of his intention to abandon the contract, or inability to perform it, the other party may act on such notice, and bring an action before the day arrives. *Fox* v. *Kitton*, 19 Ill. 533; *Follansbee* v. *Adams*, 86 id. 13; *Chamber of Commerce* v. *Sollitt*, 43 id. 521.

Such notice will excuse a tender by other party. *McPherson* v. *Walker*, 40 Ill. 373; 2 Parsons on Contracts, 188.

A party to an executory contract may stop its performance by an explicit order, and will subject himself only to such damages as will compensate the other party for being deprived of its benefits. *Collins* v. *De Laporte*, 1       162;

*Danforth* v. *Walker*, 37 Vt. 240; *Masterton* v. *Brooklyn*, 7 Hill, 61; *United States* v. *Speed*, 8 Wall. 77.

It was the duty of appellees, upon receiving notice, "to mitigate their damages by all reasonable efforts." 2 Greenleaf on Evidence, sec. 261; Wood's Mayne on Damages, 86; Sedgwick on Damages, (6th ed.) 249, side p. 361; *Roper* v. *Johnson*, L. R. 8 C. P. 183; *Hamilton* v. *McPherson*, 28 N. Y. 76; *Walworth* v. *Pool*, 9 Ark. 394; *Tufts* v. *Plymouth Gold Mining Co.* 14 Allen, 407; *Revere* v. *Boston Copper Co.* 15 Pick. 363; *Bailey* v. *Damon*, 3 Gray, 92; *Trustees* v. *Shaffer*, 63 Ill. 244.

The damages are to be considered with a view to the opportunities of the plaintiff to mitigate them. He is not to be a passive observer, but to make active efforts. *Bailey* v. *Damon*, 3 Gray, 92; 2 Greenleaf on Evidence, sec. 261; *Tufts* v. *Plymouth Gold Mining Co.* 14 Allen, 407; *Revere* v. *Boston Copper Co.* 15 Pick. 363.

Messrs. HOADLEY, JOHNSON & COLSON, for the appellant Fleischman:

A mere purchase by one for "joint benefit" does not necessarily involve a joint liability. *Donnan* v. *Gross*, 3 Bradw. 409; *Hoffman* v. *Palmer*, 67 Ill. 161.

Where partnership is put in issue, it must be established by a preponderance of evidence. *Smith* v. *Knight*, 71 Ill. 148; *Kennedy* v. *Hall*, 68 id. 165.

If a party entitled to the benefit of a contract can protect himself from a loss arising from a breach, he must do so, as, one hired to labor, when discharged, must seek other employment. *Miller* v. *Mariner's Church*, 7 Greenlf. 51; *Shannon* v. *Comstock*, 21 Wend. 457; *Heckscher* v. *McCrea*, 24 id. 303; *Clark* v. *Marsiglia*, 1 Denio, 317; *Spencer* v. *Halstead*, id. 606; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Dillon* v. *Anderson*, 43 id. 231.

Mr. WILLIAM A. MONTGOMERY, for the appellees:

The date of the breach of a contract is that fixed for the delivery of the goods—not that at which the buyer gives notice that he repudiates the contract. 2 Benjamin on Sales, (4th Am. ed.) 973; 2 Chitty on Contracts, (11th Am. ed.) 1079; 2 Parsons on Contracts, 676; *McPherson* v. *Walker*, 40 Ill. 571; *Crist* v. *Armour*, 34 Barb. 378.

When the purchaser of grain to be delivered in the future gives notice, before the time for delivery, that he will not receive and pay for the same, if the seller does not accede to the rescission the damages will not be assessed as of the day of such notice, but on the day fixed by the contract for performance. 1 Sedgwick on Damages, 601; 2 Addison on Contracts, *952; *Leigh* v. *Patterson*, 8 Taunt. 540; *Phillpotts et al.* v. *Evans*, 5 M. & W. 475; *Brown* v. *Miller*, 7 Law Rep. 319; *Frost* v. *Knight*, id. 111.

The notice (that he will not receive the wheat) amounts to nothing until the time when the buyer ought to receive the goods, unless the seller acts on it in the meantime, and rescinds the contract by selling to another person, or otherwise. *Fox* v. *Kitton*, 19 Ill. 519; *Boorman* v. *Nash*, 9 B. & C. 145; *Josling* v. *Irvine*, 6 H. & N. 512; *Cort et al.* v. *Ambergate*, 6 Eng. L. & Eq. 230; *Dunlop* v. *Higgins*, 1 H. L. Cases, (1 Cl. & Fin. N. S.) 381; *Ripley* v. *McClure*, 4 Ex. Rep. 344; *Hochster* v. *De La Tour*, 20 Eng. L. & Eq. 157.

The contract in terms was to deliver in January. A custom requiring a delivery before the time named in the contract is "inconsistent with the terms of the agreement between the parties," and therefore can not control either of the contractors. *Bissell* v. *Ryan*, 23 Ill. 566; *Wilson* v. *Bauman et al.* 80 id. 494; *Coffman et al.* v. *Campbell et al.* 87 id. 98; *Turner* v. *Dawson*, 50 id. 85.

An action can only be maintained in the name of the person who has the legal interest. *Kile* v. *Thompson*, 2 Scam.

432; *Campbell* v. *Humphries,* id. 478; *Corbett* v. *Schumacher,* 83 Ill. 403; *McHenry* v. *Ridgely,* 2 Scam. 309.

Mr. Justice Scholfield delivered the opinion of the Court:

This was assumpsit, by appellees, against appellants, to recover damages sustained by the breach of an alleged contract, whereby, on the 15th of December, 1880, appellees sold to appellants 100,000 bushels of No. 2 barley, at one dollar and twenty cents per bushel, to be delivered to appellants, and paid for by them, at such time during the month of January, 1881, as appellees should elect. Appellees tendered to appellants warehouse receipts for 100,000 bushels of No. 2 barley on the 12th of January, 1881, but appellants refused to rec▒▒▒▒▒▒ receipts and pay for the barley. Within a reason▒▒▒▒▒ ▒e thereafter appellees sold the barley upon the market, and having credited appellants with the proceeds thereof, they brought this suit, and on the trial in the circuit court they recovered the difference between the contract price and the value of the barley in the market on the day it was to have been delivered by the terms of the contract. Upon the trial appellants denied the making of the alleged contract, that they were partners, or that any purchase of the barley was made for their joint account; and they also contended, if a contract was shown, then that on the next day after it was made they gave notice to appellees that they did not consider themselves bound by the contract, and they would not comply with its terms, and evidence was given tending to sustain this contention.

The questions of fact contested upon the trial in the circuit court, and to some extent discussed in argument here, are, by the judgment of the Appellate Court, conclusively settled against appellants, and we are denied the power of inquiring whether they are rightly or wrongly settled. *Bridge Co.* v. *Commissioners of Highways,* 101 Ill. 519; *Edgerton* v.

*Weaver*, 105 id. 43; *Indianapolis and St. Louis* . *R. Co.* v. *Morganstern*, 106 id. 216; *Missouri Furnace Co.* v. *Abend*, 107 id. 44.

The questions of law to which our attention has been directed by the arguments of counsel, arise upon the rulings of the circuit judge in giving and refusing instructions. He thus ruled, among other things, that appellants, by giving notice to appellees on the next day after the making of the contract that they would not receive the barley and comply with the terms of the contract, did not create a breach of such contract which appellees were bound . , eg. d, or impose upon them the legal obligation i. resell the rley on the market, or make a forward contract for the purchase of other barley of like amount and time of delivery, within a reasonable time thereafter, and credit appellants wi ▮▮▮ nt of such sale, or give them the benefit of such forward contract, but that appellees had the legal right, notwithstanding such notice, to wait until the day for the delivery of the barley by the terms of the contract, and then, upon appellants' failure to receive and pay for it on its being tendered, to resell it on the market, and recover from appellants the difference between the contract price of the barley and its market value on the day it was to have been delivered.

That in ordinary cases of contract of sale of personal property for future delivery, nd failure to receive and pay for it at the stipulated time, the measure of damages is the difference between the contra￼ ice and the market or current value of the property at t.. ume and place of delivery, has been settled by previous decisions of this court, (see *McNaught* v. *Dodson*, 49 Ill. 446, *Larrabee* v. *Badger*, 45 id. 440, and *Saladin* v. *Mitchell*, id. 79,) and is not contested by appellants' counsel. But their contention is, that in case of such contract of sale for future delivery, where, before the time of delivery, the buyer gives the seller notice that he will not receive the property and comply with the terms of the

contract, this, whether the seller assents thereto or not, cre-
ates a breach of the contract, or, at all events, imposes the
legal duty on the seller to thereafter take such steps with
reference to the subject of the contract, as, by at once resell-
ing the property on the market on account of the buyer, or
making a forward contract for the purchase of other property
of like amount and time of delivery, shall most effectually
mitigate the damages to be paid by the buyer in consequence
of the breach ... imposing loss upon the seller. In the
buyer may th. cr ate a l ach of the contract without the
consent of the seller, we doubt not the duty to sell, (where
the property is in the possession of the seller at the time,)
at least within reasonable time after such breach, will result
as a necessary consequence of the breach. When the breach
occurs by a failure to accept and pay for property tendered
pursuant to the terms of a contract at the day specified for
its delivery, this is doubtless the duty of the seller, and no
reason is now perceived why it should not equally result from
any breach of the contract upon which the seller is legally
bound to act.

But the well settled doctrine of the English courts is, that
to buyer can not thus create a breach of contract upon which
the seller is bound to act. In *Leigh* v. *Patterson*, 8 Taunt.
540, (4 Eng. C. L. 267,) *Phillpotts et al.* v. *Evans*, 5 M. & W.
475, *Ripley* v. *McClure*, 4 Exch. 359, and, it may be, also in
other early cases, it was held a party to a contract to be per-
formed in the future can not, by merely giving notice to the
opposite party that he will not perform his part of the con-
tract, create a breach of the contract. Subsequently, how-
ever, in *Cort* v. *Ambergate and Nottingham Ry. Co.* 6 Eng.
L. & Eq. 230, and more explicitly in *Hochster* v. *De La Tour*,
20 id. 157, the doctrine was announced as not in conflict
with previous decisions, that the party to whom notice is
given in such cases will be justified in acting upon the notice,
provided it is not withdrawn before he acts. Lord CAMPBELL,

Ch. J., in delivering his opinion in the latter case, and speaking for the court, used this language : "The man who wrongfully renounces a contract into which he has deliberately entered, can·not justly complain if he is immediately sued for a compensation in damages by the man whom he has injured, and it seems reasonable to allow an option to the injured party either to sue immediately or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and can not be prejudicial to the wrong-doer."

The leading text-writers who treat of this question follow the authority of these cases, and the rule they announce is thus expressed in Sedgwick on Damages, (6th ed.) 340, *284 : "An effort has been made in many cases by the purchaser to relieve himself from the contract of sale before the time fixed for performance by giving notice that he would not be ready to complete the agreement, and in these cases it has been insisted that the damages should be estimated as at the time of giving notice; but the English courts have justly denied the right of either party to rescind the agreement, and have adhered to the day of the breach as the period for estimating damages." To like effect see Chitty on Contracts, (11th Am. ed.) 1079 ; 2 Parsons on Contracts, (6th ed.) 676 ; Benjamin on Sales, (1st ed.) 559, (4th Am. ed.) 973 ; Addison on Contracts, *952; Wood's Mayne on Damages, 250, *150.

The question came before this court in *Fox* v. *Kitton*, 19 Ill. 519, whether, when a party agrees to do an act at a future day, and before the day arrives he declares he will not keep his contract or do the act, the other party may act on such declaration, and bring an action before the day arrives; and it was held, on the authority of *Phillpotts* v. *Evans*, and *Hochster* v. *De La Tour, supra*, that he may ; and in that case it is said, in the opinion of the court, that there is no conflict in

the cases referred to by counsel in the discussion thereof, and to prove it, this language from the opinion of PARKE, Baron, in *Phillpotts* v. *Evans*, is quoted: "The notice (that he will not receive the wheat) amounts to nothing until the time when the buyer ought to receive the goods, *unless the seller acts on it in the meantime, and rescinds the contract.*" And it is then added: "This is in strict accordance with the principles recognized in the leading case relied on by the plaintiff,—*Hochster* v. *De La Tour.*"

In *McPherson* v. *Walker*, 40 Ill. 371, the question before the court was, whether it was error to say in an instruction that where there is a contract for the sale of property to be delivered in the future, a tender or offer of the property by the seller on the day of delivery is excused by a previous notice of the buyer that he would not accept the property, and it was held that it was. In the opinion of the court it is said: "The rule is, if one bound to perform a future act, before the time for doing it declares his intention not to do it, this, of itself, is no breach of his contract; but if this declaration be not withdrawn, when the time arrives for the act to be done it constitutes a sufficient excuse for the default of the other party,"—referring to 2 Parsons on Contracts, 188, *Hochster* v. *De La Tour*, *supra*, and *Crist* v. *Armour*, 34 Barb. 378.

In *Chamber of Commerce* v. *Sollitt*, 43 Ill. 519, the charac⸗ ter of question is the same as in the two preceding cases to which we have just referred, and it was decided the same way. *Cort* v. *Ambergate Ry. Co.*, *supra*, *Hochster* v. *De La Tour*, *supra*, and *Fox* v. *Kitton*, *supra*, are referred to as sustaining the decision.

In *Cummings* v. *Tilton*, 44 Ill. 173, one of the points decided was, if the party who is to receive informs the party who is to deliver that he can not pay the money, the latter is excused from offering to deliver,—but there is no discussion of the question.

*Follansbee* v. *Adams,* 86 Ill. 13, involved the same question as that decided in *Fox* v. *Kitton, supra,* and on the authority of that case, and *Chamber of Commerce* v. *Sollitt, supra,* it was decided the same way.

While it is true in none of these cases was the question whether one party to a contract may, by only a notice of his intention not to comply with its terms, create a breach of the contract, before the court, still, in all of them it is assumed that he can not, for if he could, the questions they decide would have been immaterial, and the English cases which they profess to follow, as has been seen, expressly hold that he can not.

But counsel insist this court has held the contrary in *Gale* v. *Dean,* 20 Ill. 320, and in *Trustees* v. *Shaffer,* 63 id. 244. This is a misapprehension. Neither case professes to discuss the question before us, and no notice is taken in either of the decisions or dicta to which we have above referred. In *Gale* v. *Dean* no time was fixed by the terms of the contract for its performance, and in view of this omission the court held it reasonable that after the lapse of a reasonable time either party might declare a breach of the contract, if not performed; and it was in reference to this omission and these reciprocal rights of the parties under the contract, solely, that the court used the language quoted and relied upon by counsel for appellants, namely, that "we do not think that Gale, when he found he could not perform, was absolutely at the mercy of Dean for the determination of the time when his liability should be fixed and the measure of that liability determined." It had not the slightest reference to the character of question now before us. In the other case, *(Trustees* v. *Shaffer,)* the time for the performance of the contract had arrived. There was no question in that respect. If the plaintiff was improperly discharged, there was a clear breach of the contract. There was no controversy in regard to the question whether one party to a con-

tract to be performed in the future, can, by a mere notice in advance of the time of performance that he does not intend to perform, create a breach of the contract; nor was there any question as to what acts a party may be required to do in advance of a breach of contract to mitigate the damages of the adverse party, because of notice that there would be a breach by him. After breach of a contract, as before herein intimated, we do not, at present, question that it is the duty of the party entitled to damages to do what he reasonably may, without prejudice to his rights, to lighten the burden falling on his adversary.

There is nothing in the more recent English cases, as we understand them, repugnant to those to which we have referred upon this question.

In *Frost* v. *Knight*, L. R. 7 Exch. 111, (1 Moak, 218,) decided in the Exchequer Chamber in February, 1872, the suit was for breach of a marriage contract, whereby the defendant had promised to marry the plaintiff upon the death of his father, but the father still living, the defendant had announced his intention of not fulfilling his promise on his father's death, and broke off the engagement. COCKBURN, Ch. J., in delivering the opinion of the court, thus states the law, after referring to the previous decisions: "The promisee, if he pleases, may treat the notice of intention" (*i. e.*, not to perform the contract,) "as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it. On the other hand, the promisee may, if he thinks proper, treat the

repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it, and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the proper time, subject, however, to abatement in respect of any circumstance which may have afforded him the means of mitigating his loss." This was followed, and its doctrine reiterated, in *Brown v. Miller*, L. R. 7 Exch. 319, (3 Moak, 429,) decided in the Court of Exchequer in June, 1872, and *Roper* v. *Johnson*, L. R. 8 C. P. 167, (4 Moak, 397,) decided in the Common Pleas in February, 1873.

Counsel for appellants refer to the fact that KEATING, J., in *Roper* v. *Johnson*, says: "If there had been any fall in the market, or any other circumstances calculated to diminish the loss, it would be for defendant to show it,"—and then cites with approval from the opinion of COCKBURN, Ch. J., in *Frost* v. *Knight, supra,* to the effect that "the damages are subject to abatement in respect of any circumstances which would entitle him to a mitigation," etc., and insist they recognize the duty, here, of appellees, upon receiving notice, etc., to have sold upon the market or have entered into another contract for January delivery, etc. It is enough to observe in answer to this, that in both *Frost* v. *Knight* and *Roper* v. *Johnson, supra,* the notice that defendant would not comply with the contract was accepted and acted upon by the plaintiff as a breach of the contract; and so what was said in respect of the duty of the plaintiff to mitigate damages was said with reference to a case wherein he recognized the contract as having been broken by the notice of the adverse party, and with reference to what was to be done by him upon and after the recognition of that breach, and hence can have no application here. If a party is not compelled to accept the declarations of the other party to a contract that he will not perform it, as a breach, it must logically follow that he is under no obligation to regard that declaration for any pur-

pose, for, as we have seen, the theory in such case, as laid down by COCKBURN, Ch. J., in *Frost* v. *Knight*, *supra*, is : "He keeps the contract alive for the benefit of the other party as well as his own.    He remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstance which would justify him in declining to complete it."

Nothing would seem to be plainer than that while the contract is still subsisting and unbroken, the parties can only be compelled to do that which its terms require.    This contract imposed no duty upon appellees to make other contracts for January delivery, or to sell barley in December, to protect appellants from loss.    It did not even contemplate that appellees should have the barley ready for delivery until such time in January as they should elect.    If appellees had then the barley on hand, and had acted upon appellants' notice, and accepted and treated the contract as then broken, it would, doubtless, then have been their duty to have resold the barley upon the market, precisely as they did in January, and have given appellants credit for the proceeds of the sale ; but it is obviously absurd to assume that it could have been appellees' duty to have sold barley in December to other parties which it was their duty to deliver to appellants, and which appellants had a legal right to accept in January..

We have been referred to *Dillon* v. *Anderson*, 43 N. Y. 232, *Danforth et al.* v. *Walker*, 37 Vt. 240, (and same case again in 40 Vt. 357,) and *Collins'* v. *De Laporte*, 115 Mass. 159, as recognizing the right of either party to a contract to create a breach of it obligatory upon the other party, by giving notice, in advance of the time for the commencement of the performance of the contract, that he will not comply with its terms. An examination of the cases will disclose that they do not go so far, but that they are entirely in harmony with what we

have heretofore indicated is our opinion in respect of the law applicable to the present question.

In *Dillon* v. *Anderson*, the action was for a breach of contract for the construction of a pair of boilers for a steamboat. After work had been commenced under the contract, and a certain amount of material had been purchased therefor by the plaintiff, notice was given by the defendant to stop work, that the contract was rescinded by the defendant, and that he would make the plaintiff whole for any loss he might suffer. The court held that it was the duty of the plaintiff, as soon as he received the notice, to have so acted as to save the defendant from further damage, so far as it was in his power.

In *Danforth et al.* v. *Walker*, 37 and 40 Vt., the defendant made a contract with the plaintiffs to purchase of them five car loads of potatoes, being fifteen hundred bushels, to be delivered at a designated place as soon as the defendant should call for them, and as soon as he could get them away, some time during the winter: Soon after the first car load was taken, potatoes fell in the market, and the defendant thereupon wrote the plaintiffs not to purchase any more potatoes until they should hear from him. The court held this created a breach of the contract, and that plaintiffs were not authorized to purchase any more potatoes on account of the defendant after they received the notice. The court, in the case in 37 Vt., on page 244, use this language: "While a contract is executory a party has the power to stop performance on the other side by an explicit direction to that effect, by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that point or stage in the execution of the contract. The party thus forbidden can not afterwards go on, and thereby increase the damages, and then recover such increased damages of the other party." And this same rule, upon the authority of these cases, is laid down in 2 Sutherland on Damages, 361.

The points, in issue in *Collins* v. *De Laporte*, are not pertinent to the present question, but in the opinion the court quotes the rule as above laid down, upon the authority of *Danforth et al.* v. *Walker*, and other cases.

It will be observed that in each of these cases the time for the performance of the contract had arrived, and its performance had been entered upon. In neither of them was the defendant at liberty, after notifying the plaintiff not to proceed further in the performance of the contract, to demand that he should proceed to perform it, as it was said in *Frost* v. *Knight, supra,* the defendant was, in case of notice, not to perform a contract the time of the performance of which is to commence in the future. In these cases there is no time or opportunity for repentance or change of mind,—in those there was. That it was not intended, by these cases, to trench upon the doctrine of *Leigh* v. *Patterson, Phillpotts* v. *Evans,* and other bases of like character, is manifest from the fact that they take no reference to those cases, or to the rule they announce; and in *Collins* v. *De Laporte,* no reference is made to *Daniels* v. *Newton,* reported in the next preceding volume, (114 Mass. 530,) wherein that court refused to follow the modification made in *Hochster* v. *De La Tour,* and *Frost* v. *Knight,* of the rule recognized by the preceding English decisions, but held that an action for the breach of a written agreement to purchase land, brought before the expiration of the time given for the purchase, can not be maintained by proof of an absolute refusal, on the defendant's part, ever to purchase. It follows that, in our opinion, the ruling on the po   in question was free of substantial objection.

Ob      on is urged because the circuit judge gave an instr        at the instance of appellees, with reference to the
ol          and duties of the parties under the alleged con-
            , in which no mention is made of a custom affect-
            igations and duties, of which custom proof was
            the trial. The existence of this custom was

not conceded. Appellants claimed its existence, and appellees denied it. There was evidence both ways. This instruction presented the law correctly upon appellees' theory of the case, and the seventh instruction, given at the instance of appellants, presented the law,—including the hypothesis of a custom being proved,—upon their theory of the case. There is no repugnance between them. Each simply presents a different theory of the case, having evidence tending to sustain it,—and in this there is no error. *City of Chicago* v. *Schmidt, Admx.* 107 Ill. 186; *Illinois Central R. R. Co.* v. *Swearingen*, 47 id. 206.

There was proof, upon the trial, tending to show that although appellees owned and had in their possession, at the time of the making of the alleged contract, an amount and kind of barley equal to or greater than that professed thereby to be sold, yet that they then only had of the warehouse receipts, which they actually tendered to appellants in January, those for 48,500 bushels, and that they subsequently obtained from Huck & Lefens the warehouse receipts for the remaining 51,500 bushels, upon a contract, whereby appellees agreed to pay Huck & Lefens therefor, at all events, one dollar per bushel, and one dollar and twenty cents per bushel if appellees shall recover from appellants in this suit. The court, in giving and refusing instructions, ruled that this in nowise concerned appellants,—that if the facts were as claimed, it did not make Huck & Lefens necessary parties to the suit, nor entitle appellants to any reduction in the measure of damages. In this there was surely no error. Huck & Lefens have no privity of contract with appellants, and whether appellees pay much or little for the barley with which to comply with their contract, can not concern appellants. It was sufficient they owned and tendered the barley at the appointed time. If it had been given them, their measure of damage precisely the same as it would be had they paid

than it was worth.   The only effect of the transactions by which they obtained the barley is to vest title in them, and when it was thus vested it was absolutely theirs to do with as they pleased.    No court, so far as our researches have enabled us to know, ever held that the price paid by the seller for an article sold and contracted to be delivered in the future, was a circumstance to be taken into consideration by the jury in determining the amount of damages the seller is entitled to recover upon the buyer's refusing to receive and pay for the property, and the distinguished counsel representing appellants have been unable to refer us to any such decision.

Objection is also taken to the language of the instruction with reference to the joint liability of appellants.    The language of the instruction is objectionable, but, in our opinion, it is not possible that it could have misled the jury.    The question was put in issue whether appellants were partners in the transaction, by proper pleadings.    Evidence was introduced by each party on that question.    There was not a particle of evidence tending to show that appellants were jointly interested in the transaction, if interested at all, otherwise than as partners.    If the evidence in behalf of appellees prevailed, appellants were partners in the transaction; if that in behalf of appellants prevailed, they were not.

Upon the whole, we perceive no error of law in the rulings below.   The judgment is therefore affirmed.

*Judgment affirmed.*