184        APPELLATE COURTS OF ILLINOIS.

VOL. 28.]    J. A. Roebling's Sons Co. v. Lock Stitch Fence Co.

## JOHN A. ROEBLING'S SONS COMPANY
## v.
## THE LOCK STITCH FENCE COMPANY.

*Sales—Contract for Future Delivery — Breach of—Tender—Instructions—Interest—Evidence.*

1.   Where one contracts to deliver personal property in the future, at a certain price, and the vendee agrees to receive and pay for it at such time in accordance with the agreement, but afterward, and before the time arrives for delivery, repudiates the contract and gives the vendor notice of his intention not to perform it, the latter may accept such notice and elect to consider the contract at an end, and sue at once to recover damages for the breach, or he may decline to consider the contract annulled, and demand its performance on the part of the other party.

2.   Where a certain commodity is sold to be delivered in installments, the failure of the seller to deliver the quantity required as to any installment gives the purchaser the power to rescind the entire contract.

3.   Although the mere formal act of tender or offer to perform on the part of the vendor may be dispensed with where the vendee gives notice that the goods will not be accepted even if tendered, the vendor must be in position to perform if the notice be recalled.

4.   One can not complain of instructions which, though erroneous, are favorable to himself, nor of a refusal to give an improper instruction.

5.   In the case presented, evidence as to the amount which the refused wire brought at public auction was properly excluded.

6.   It *seems* that goods, when tendered, must be in condition for immediate delivery, and not subject to any lien for freight, storage, or other charge which it is the duty of the vendor to liquidate.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Will County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. C. W. BROWN and F. BENNITT, for appellant.

The vendor of personal property, in a suit against the vendee for not taking and paying for the property, may sell the same, and recover the difference between the contract price and the price of re-sale.   Bagley v. Findlay, 82 Ill. 524;

Saladin v. Mitchell, 45 Ill. 84; Ullman v. Kent, 60 Ill. 272; Benj. on Sales, 3d Ed., p. 777.

Where goods are sold, to be delivered in the future, the vendee can not create a breach of the contract by giving notice that he will not receive the goods. Kadish v. Young, 108 Ill. 170; McPherson v. Walker, 40 Ill. 371; Chamber of Commerce v. Sollitt, 43 Ill. 519.

The rule is, if one bound to perform a future act, before the time for doing it declares his intention not to do it, this, of itself, creates no breach of his contract; but, if this declaration be not withdrawn when the time arrives for the act to be done, it constitutes a sufficient excuse for the default of the other party. McPherson v. Walker, 40 Ill. 371; Cummings v. Tilton, 44 Ill.173; Benj. on Sales, 3d Ed., p. 748, Sec. 760.

In actions upon contracts it is necessary to aver in the declaration performance, or an offer to perform, on part of the plaintiff, but it is never necessary to *prove* the performance of a condition which has been waived or dispensed with by the defendant. A condition once waived is gone forever, and the performance of it can not thereafter be required. McPherson v. Walker, 40 Ill. 371.

Messrs. Geo. S. House and Fry & Babb, for appellee.

The refusal of appellee, April 27th, to further perform, did not of itself constitute a breach of the contract. It gave appellant an election to terminate the contract, or to continue it in force. Electing the latter, as it did April 29th, it kept the contract alive for the defendant, as well as itself, and was bound to show such performance on its part as would have been required if the defendant had never refused to perform. Johnstone v. Willing, 55 L. J. R. 162; S. C. L. R. 16 Q. B. Div. 470; McLellan v. Winston, 12 Ontario Rep. 439; Kadish v. Young, 108 Ill. 170; Frost v. Knight, L. R., 7 Exch. 111 ; Dingley v. Oler, 117 U. S. 503 ; Smoot's Case, 15 Wall. 36; Benjamin on Sales (4th Ed.), Sec. 568; Norrington v. Wright, 115 U. S. 205; Cleveland Rolling Mill v. Rhodes, 121 U. S. 264; Brigham & Co. v. Carlisle, 78 Ala. 247.

Appellant failed to show such performance as its election

186        APPELLATE COURTS OF ILLINOIS.

VOL. 28.]  ' J. A. Roebling's Sons Co. v. Lock Stitch Fence Co.

required, in that it had no wire ready for delivery from April 27th till May 24th. Norrington v. Wright, 115 U. S. 188; Filley v. Pope, 115 U. S. 213; Pope et al. v. Porter et al., 102 N. Y. 371; Salmon v. Boykin, 6 Cent. Rep. (Md.) 485; Hime v. Klasey, 9 Ill. App. 166.

The instruction for interest upon $234.93 was properly refused. Granting that such sum was due, yet, as the instruction was for interest only, in case the jury found " such sum or sums were unreasonably withheld," it was properly refused, because there was no evidence upon which to base an instruction upon that ground. Sammis v. Clark, 13 Ill. 544; Hitt v. Allen, 13 Ill. 592; Aldrich v. Dunham, 16 Ill. 403; Devine v. Edwards, 101 Ill. 138; West Chicago Alcohol Wks. v. Sheer, 104 Ill. 589; Moshier v. Sheer, 15 Ill. App. 342.

The instruction was properly refused, because it only required the jury to find that the money was "unreasonably withheld," when it should have required them to find both unreasonable and vexatious delay in payment. Devine v. Edwards, 101 Ill. 138; West Chicago Alcohol Wks. v. Sheer, 104 Ill. 589.

LACEY, P. J.   The appellant, a corporation duly organized under the incorporation laws of the State of New Jersey, sued the appellee, a corporation duly organized under the laws of the State of Illinois, in an action of assumpsit for breach of contract.   The appellant was engaged in the manufacture and sale of fence wire, located at Trenton, New Jersey, and the appellee was engaged in the preparation of the wire for fencing by putting barbs on it, and also in the sale of such wire fencing material, land was located at Joliet, Will county, State of Illinois.   On the 7th day of March, A. D. 1885, the appellant and appellee entered into a contract for the sale by the former to the latter of five hundred tons of galvanized wire by means of a proposition made by appellee in a letter, dated March 3, 1885, at Joliet, and sent to appellant at Trenton, New Jersey; the proposition being accepted by it on the 7th March, 1885, by means of a letter sent to appellee at Joliet in reply.

By the terms of the proposition and acceptance the wire was to be in porportion of 78 per cent. No. 12 and 22 per cent. No. 13, at a price of $3.65 per 100 ℔, delivered in Joliet between the 3d of March and July 1st, at the rate of twenty tons per week, until appellee should order differently. The shipment of twenty tons per week was to commence after filling an old order shipping the same quantity per week. The payment was to be made for the wire in sixty days from receipt of the wire, with two per cent. off for cash paid in ten days at the option of the appellee. As we understand the evidence (deposition of Roebling), the first shipment of the wire on the last contract was made March 18, 1885, in car No. 5117, in which was a total of wire of 40,136 ℔, of which 20,998 ℔ applied on the last contract, and 19,138 were for the completion of a former contract, the wire arriving in Joliet seven days later. The appellant then continued to ship the wire to appellee and it to accept it under the contract till the amount of 240,173 ℔ were received, the last shipment of such amount being April 21, 1885, arriving on the 27th of the same month. That on the 29th of the last named month the appellees sent a telegram to appellants that it would take no more wire even if shipped; that it could not use the quality. This telegram was confirmed by letter of the same date also refusing to accept any more wire on account of the bad quality of the wire already shipped. To this telegram and letter the appellant replied that it could not agree to stop shipment, that all the wire had been tested before shipment. The appellee also, by telegram of May 18, 1885, in reply to appellant's letter of May 15th, says, that the letter was received and that it " will not receive wire if shipped;" and answer was received from appellant saying it would not stop shipping and insisting on holding appellees to the contract. The total amount the appellees refused to receive was 759,896 ℔. The amount that was refused was sold in Joliet at public auction and brought $3,293.86 less than the contract price, this being about the amount of the decline in the price of wire which took place after the contract was entered into. There was a balance due the appellant on the amount of wire received under the con-

188    Appellate Courts of Illinois.

Vol. 28.]    J. A. Roebling's Sons Co. v. Lock Stitch Fence Co.

tract of $234.93, for which amount only it recovered, without interest, in the court below, the claim for damages on account of the refusal of the appellee to receive the balance of the wire being rejected by the jury. From the judgment this appeal is taken.

There is no complaint by the appellant of any action of the court in the matter of the instructions, except, perhaps, as to its refusal to give an instruction asked for, pertaining to the question of interest on the balance due on the wire received by appellee. The instructions on the main issue concerning the breach of the contract by appellee were as favorable for the appellant as it could, or in fact did, ask.

The second given instruction on behalf of the appellant informed the jury that if appellee notified the appellant "that it would not receive any more wire under the contract and the appellant should not ship any more wire thereunder, and that appellee would not receive it if shipped, and if such directions were never rescinded or withdrawn, that if, at the time appellant was ready and willing to perform the contract on its part, etc., then appellant had a right to recover damages;" and, in addition to the above instruction for appellant, by the fourth instruction, the jury was told that "then such notice on the part of appellee would excuse appellant from an actual tender of the wire so bargained and sold, and that it is sufficient under the issues in this case, upon this question, for the appellant to show such readiness, ability and offer to perform the contract on his part;" *i. e.*, that it was able to perform when it received the notice. The court on its own motion gave an instruction embodying about the same law. We are of opinion that the court erred in those instructions in favor of the appellant and in no wise against him.

The main questions of law involved in this case have been thoroughly considered and settled in Kadish et al. v. Young et al., 108 Ill. 170, and we shall do no more than attempt to state what we understand the rule to be as there announced in such cases. As we understand the law the rule is that where one contracts to deliver an article of personal property, in the future, at a certain price, and the con-

tractee agrees to receive and pay for it at such time in accordance with the agreement, and afterward, and before the time arrives for delivery, repudiates the contract as far as he is able and gives the contractor notice of his intention not to perform it, the latter may accept such notice and elect to consider the contract at an end and sue at once to recover damages for the breach, or he may refuse to allow the contract to be annulled and demand its fulfillment on the part of the other party.

In case he pursues the latter course the contract is regarded in force the same as though no notice of abandonment had ever been given by the other party and he must hold himself ready to perform the contract at the time it should have been performed according to its terms, as, at any time before or at the time of fulfillment arrives, the contractee may change his mind and demand its fulfillment by the contractor.   In respect to the barley contract which was the subject of the decision in Kadish et al. v. Young et al., *supra*, the court say:  "It is obviously absurd that it could have been appellee's (the contractor's) duty to have sold barley·in December to other parties, which it was their duty to deliver to appellants and which appellants had a legal right to accept in January," although they had given notice they would not accept appellee's refusal, in that case choosing to hold the contract in force.

If we understand it, the above instructions, given for appellant, told the jury if the appellant was, at the time of receiving the notice, ready and willing and able to perform, and offered to perform the contract on its part, and the notice never was withdrawn, then, as stated in the second instruction, appellant could recover, and as also stated in the fourth, neither was any tender of the wire necessary, as the contract contemplated.

These instructions would have been correct if the appellant had, upon receiving the notice, chosen to allow the contract to be annulled according to the notice and had been suing for the breach of it occurring at that time, but that was not the case; it was attempting to sue on the contract the same as though notice had never been given, and the breach had taken

190     APPELLATE COURTS OF ILLINOIS.

VOL. 28.]     J. A. Roebling's Sons Co. v. Lock Stitch Fence Co.

place weekly for failure of appellee to receive and pay for the twenty tons of wire per week. The appellant should have been prepared at Joliet, where the delivery was to be made, to deliver the twenty tons each week, and offered to deliver the same unless excused from so doing on account of the notice previously given by appellee that it would not accept it. Though there was an error in the appellant's instructions it was in favor of it and, of course, it can not be heard to complain.

The only point, except in reference to the refused instruction concerning interest, is as to whether there was sufficient evidence, or rather want of evidence, to sustain the verdict of the jury. The main point of the defense rested on the claim that appellants had no wire at Joliet ready for delivery to appellees under the contract from April 27th till May 24th. The first named date was when the last car load of wire arrived at Joliet, and the last named date when the next car load arrived. It appears during that time the appellant had no wire in Joliet from which it was able to deliver the twenty tons per week. This time was about three weeks and six days. It is also insisted that from May 24th to June 26th all the wire offered to appellee was subject to a freight charge of $399.94, which was not paid until the latter named date, and that until the freight was paid appellant could not deliver it. It appeared that the appellees had received some six shipments of the wire from March 25th to April 27th, both dates inclusive, making about 120 tons, which was received on the contract and must be regarded as a fulfillment of it up to the latter date, when the appellee's notice to quit shipping was given. It is insisted by appellant that the first shipment, received on March the 25th, can not count on the fulfillment of the above contract because the old contract was not completed till that date, and the fulfillment was to commence on the new after the old was completed; but we can not view the matter in that light, for the wire was tendered and accepted on the new and the old was completed at the same time. The parties by their action had given this construction to the contract to be the true one as to the date to commence, and the

jury had the right to find that this was the proper one. From the time the contract was repudiated, April 27th, until May 24th, there was no wire in Joliet out of which the tender could have been made by appellants, leaving a space of three weeks' delivery that the appellant was not in condition or able, in Joliet, to make, even in case it had been called upon at any of the times when the wire was due to make the delivery. The appellant argues that if the shipment was made of twenty tons per week within the time required, that that fulfilled the contract as to the delivery. We do not so read the contract. The letter of acceptance written by appellant is that the wire was to be delivered, not shipped, at the rate of twenty tons per week—delivered in Joliet. But even if that were so, the quantity was not even shipped within the time required by the contract. The law appears to be well settled that in a case like this, where a certain commodity is sold to be delivered in installments and received in that manner, the failure of the seller to fulfill the contract in the particular of not delivering the quantity required as to either of the installments, gives the purchaser the power to rescind the entire contract. In the contract of merchants, time is the essence of the contract. Norrington v. Wright, 115 U. S. 188, and cases cited; Filley v. Pope, 115 U. S. 219. It is contended by appellant, it was not necessary to tender, or even to be prepared to tender, the wire to the appellee until he had given notice of his willingness to accept it after the notice that he would not, and the case of McPherson v. Walker, 40 Ill. 371, is confidently relied on to support such claim.

The instruction sustained by the Supreme Court was this: If the defendant gave the plaintiff previously to understand that he would not accept the oats, the commodity contracted to be delivered on the day fixed by the contract, " then an offer or tender of the oats by the plaintiff is excused and the jury must find for plaintiff." It is questionable whether this case is not overruled by the case of Kadish et al. v. Young et al., *supra;* at all events the court in its opinion in the latter case does hold that the seller must be prepared and ready to deliver the goods until after the day of performance is past

192     APPELLATE COURTS OF ILLINOIS.

VOL. 28.]     J. A. Roebling's Sons Co. v. Lock Stitch Fence Co.

in case the purchaser changes his mind and notifies him he will take them; hence, for that very reason, the vendor is not required to re-sell in order to save the purchaser from damage, or do any other act to save him. It may be, and we are inclined to so hold to make the two opinions harmonize, that while the notice remains standing and unrecalled, given by the purchaser, that he will not accept even if the goods are tendered, the mere formal act of tender or offer to perform may be dispensed with; but we can not believe that the seller is relieved from being in readiness on the day when the delivery is to be made, to fulfill by delivering the goods, if he gets a notice from the vendee that he will take them. The theory of the law is that the contract is kept alive and in force for the benefit of both parties and this alone is done at the option of the seller. It follows, therefore, that he, at least, must be ready to perform on his part. If he does not want to perform the contract he must treat it as rescinded at the time of getting the notice or before the notice is withdrawn. The declaration in this case goes on the theory that the contract was alive and that the goods were tendered and the appellee refused to accept and pay for them.

As to the other point, in regard to the freight charges not having been paid, we find support for appellee's claim that the goods must be in a condition for immediate delivery, and all freight paid when the tender is made, in Dunham v. Pettie, 4 E. D. Smith, 500; but whether in a case like this, where, perhaps, the matter of a formal tender is dispensed with, we need not decide, as its decision is not necessary for the determination of the case, and we therefore leave the question unsolved so far as this court is concerned. We think, however, that the appellant should have had the wire present in Joliet at the time the respective deliveries should have been made, so that in case appellee had desired, it could have been immediately delivered. The evidence, as we think, sustains the verdict. As far as the question of interest is concerned we perceive that it is a small matter, about $20, and had it not been for the fault of the appellant in not asking the proper instruction in regard to interest being payable on all

written contracts from the time they are due, the jury would have been properly instructed. But instead of that an inaccurate instruction was presented to the court seeking to recover on the grounds of "unreasonable and vexatious delay in payment" of the balance due on the wire already delivered; thus asking the court to present an immaterial matter to the jury and that in an erroneous manner, even had such rule been involved. It was sought to recover interest on account of unreasonable delay in payment without adding "and vexatious." The court was not bound to give the instruction as asked, and no other on the subject was presented. The exclusion by the court of the evidence pertaining to the amount the refused wire brought was not error, as it was sold on credit, and, under the state of the evidence and verdict, it could not have harmed appellant even if proper. There was evidence of a large decline in wire and nothing recovered.

The judgment is therefore affirmed.

*Judgment affirmed.*