536     APPELLATE COURTS OF ILLINOIS.

Alvey-Ferguson Co. v. Ernst Tosetti Brew. Co., 178 Ill. App. 536.

## The Alvey-Ferguson Company, Appellant, v. Ernst Tosetti Brewing Company, Appellee.

### Gen. No. 18,006.

1. CONTRACTS—*when instructions misleading.* In action for the selling price of conveyors, an instruction that if, after the contract was signed, plaintiff and defendant agreed that certain changes should be made in the construction, and that new blueprints were to be prepared showing such changes and to be approved by defendant, and if defendant refused to approve the blueprints showing such changes the issues should be found for the defendant, is erroneous where the evidence shows that the changes were all agreed upon at the time the contract was signed and marked upon the blueprint attached to the contract.

2. CONTRACTS—*when instruction is prejudicial.* In an action for the selling price of conveyors, an instruction to the effect that if defendant notified plaintiff before the conveyors were completed that it would not accept them, plaintiff is not entitled to recover the purchase price and verdict should be for the defendant, is erroneous where the only evidence of such notice is a letter containing these words, "We are not yet prepared to install such machinery and would advise you not to do anything for the present in this matter."

3. CONTRACTS—*effect of notice from one party that he does not intend to perform.* One party to a contract cannot create a breach merely by giving notice that he does not intend to be bound.

4. CONTRACTS—*notice of an intended breach.* A mere notice of an intended breach of a contract is not of itself a breach, though it may become so if accepted and acted upon as such by the other party, yet if not so accepted and acted upon the notice remains only a matter of intention and may be withdrawn at any time before performance is in fact due.

5. CONTRACTS—*election on notice of intended breach.* Where plaintiff has contracted to make and install conveyors for defendant within sixty days, and defendant sends notice that he does not intend to be bound, plaintiff may elect to consider it as a breach of the contract or treat it as inoperative and proceed with the work of construction in order to be able to perform within the stipulated time.

6. PLEADING—*recovery for breach of contract.* Where defendant gives notice of an intended breach of a contract of sale and refuses

Alvey-Ferguson Co. v. Ernst Tosetti Brew. Co., 178 Ill. App. 536.

to complete the contract, plaintiff cannot recover the purchase price upon an *indebitatus* count, but must recover upon counts alleging damages for a breach of the contract in refusing to accept the goods when tendered.

Appeal from the Circuit Court of Cook county; the Hon. Richard E. Burke, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed April 3, 1913.

Tinsman, Rankin & Neltnor, for appellant.

Stein, Mayer & Stein, for appellee.

Mr. Justice Fitch delivered the opinion of the court. From a judgment in favor of the defendant, the plaintiff appeals, and assigns a number of alleged errors. The declaration is in *assumpsit* and consists of three special counts and the common counts. Each of the special counts sets out in *haec verba* a written contract, dated April 21, 1908, between the plaintiff, a Kentucky corporation, and defendant, an Illinois corporation, by the terms of which plaintiff agreed ''to construct and install,'' upon defendant's premises in Chicago, a system of conveyors according to specifications and drawings thereto attached, the construction to be completed within sixty days and the contract to be fully complied with on the part of the plaintiff when the system shall have been constructed, installed and in successful operation; for which defendant agreed to pay $2000 in instalments. The specifications state that the system of conveyors is covered by letters patent owned and controlled by the Alvey-Ferguson Co., and consists of a gravity conveyor and elevators of steel, a roller chain with flights or carriers, sprocket wheels, shafting and pulley, all supported by iron hangers and stands. The drawings consist merely of a blueprint, showing the arrangement and dimensions of the conveyors, supports and other parts of the system. It is then averred that plaintiff at once began

the work of making the system of conveyors and completed and shipped the same to the defendant within sixty days in accordance with the contract; that it also furnished at the time and place of delivery, "the necessary experts, labor, materials and other facilities for the installation of said system of conveyors and was then and there ready and willing, and tendered and offered to deliver the same to the defendant;" but that defendant would not accept it, nor permit the plaintiff to install it, and would not pay for it. The first and second counts conclude with a clause alleging that plaintiff has been damaged to the amount of $2000. The third count concludes in the form of *indebitatus assumpsit* for the contract price of the conveyors.

It appears from the evidence that the contract was signed on behalf of defendant by Otto Tosetti, its vice-president, in Chicago, in the presence of a traveling salesman of the plaintiff; that at that time certain pencil memoranda were made upon the blueprint attached to the contract, indicating sundry changes to be made in some features of the plan as shown by the blueprint, and that it was agreed that a corrected blueprint should be made and sent to Mr. Boetter, secretary of the defendant company, for his approval. The plaintiff's salesman then mailed the contract to the office of the plaintiff in Louisville, where it was signed on behalf of plaintiff by the plaintiff's vice-president. Thereupon plaintiff wrote to the defendant, acknowledging receipt of the signed contract, and adding: "We will, of course, make up the conveyor exactly in accordance with our plans submitted, except for the changes which have been fully explained by our Mr. Koehler. In accordance with their promise we shall be pleased to have our drafting department prepare a new drawing showing changes and as soon as completed will send you full particulars for approval." To this letter defendant replied on April 30th, as follows: "We are in receipt of your favor of the 27th inst., and note contents. We would say that we are

not yet prepared to install such machinery and would advise you not to do anything for the present in this matter.'' Meanwhile, plaintiff had begun work on the conveyors and the necessary material had been marked out and cut in defendant's shop. On May 7th plaintiff wrote to defendant: ''Referring to our letter of April 27th and the promise of our Mr. Koehler, we beg to enclose herewith revised blue print showing arrangement of conveyors for which you favored us with order.'' To this letter defendant replied on May 11th by telegraph as follows: ''Have received blue print. You have our letter April 30th, 1908, not to ship any goods. Please acknowledge.'' Instead of answering this at once, plaintiff sent its salesman to see Mr. Boetter. What occurred at this interview is in dispute. The salesman testified that Boetter said that after thinking over the matter, he had concluded not to install the conveyors at that time, unless plaintiff would reduce the price; to which the salesman replied that plaintiff was making the conveyors and would go ahead with its part of the contract; and that all Boetter said to this was that he had no objection, if plaintiff would reduce the price. Boetter, on the other hand, testified that he told the salesman at that time that the blueprint had not been approved; that he had changed his mind and did not like the system; that he also told the salesman not to manufacture or ship the goods, and that if plaintiff shipped the conveyor defendant would not accept it nor permit it to be installed. On May 18th, plaintiff wrote to defendant, saying that it had learned from the salesman ''that Mr. Boetter was inclined to cancel the contract    *    *    * simply because he thought he could secure a conveyor system at a cheaper price;'' that ''the contract is a legal, binding obligation upon you, and we propose to comply with it so far as we are concerned. We trust that when you have duly considered the matter you will see it as we do. In the meantime, we will proceed with the construction and be ready to ship the convey-

540    APPELLATE COURTS OF ILLINOIS.

Alvey-Ferguson Co. v. Ernst Tosetti Brew. Co., 178 Ill. App. 536.

ors within contract time." Plaintiff then finished the construction work, and on June 15th, shipped the conveyors and mailed the bill of lading for the same to defendant at Chicago. Defendant returned the bill of lading, saying: "We have come to the conclusion that we do not want to install your conveyor system at the present time." Plaintiff nevertheless sent workmen to defendant's place of business to install the conveyors, but defendant refused to permit the car containing them to be unloaded, and they were thereupon trans-shipped to Louisville and stored in plaintiff's warehouse.

The court instructed the jury that "if you find from the evidence that *on April 30, 1908,* the defendant noti-- fied the plaintiff that it would not accept the conveyors described in the contract in evidence, and that, at that time, the plaintiff had not completed the manufacture of said conveyors, then the plaintiff is not entitled to recover the purchase price of the conveyors, *and your verdict should be for the defendant."* There was no claim on the part of the plaintiff that it had completed the manufacture of the conveyors on *April 30th.* The evidence shows, without contradiction, that at that time the manufacture of the conveyors had but just begun. This being true, the instruction in terms directed the jury to find a verdict for the defendant if they found from the evidence that the letter of April 30th "notified the plaintiff that defendant would not accept the conveyors." That letter contains no such language, nor are the words of the letter fairly susceptible of any such meaning. Its words are: "We are not *yet* prepared to install such machinery and would advise you not to do anything *for the present* in this matter." This letter was written more than fifty days before the expiration of the time within which the conveyors were required, by the terms of the contract, to be installed. *Non constat* but that the defendant might be fully "prepared to install" the conveyors when the time arrived for such installation;

and in the meantime, the parts had to be assembled and put together so that plaintiff would be ready and able to install them when that time came. By giving the instruction quoted, the court, in effect, told the jury that they were at liberty to find that the defendant intended the letter to mean something it did not say, and that if the plaintiff failed to divine therefrom a hidden intention on the part of the defendant to repudiate its contract, then the plaintiff could not recover. The instruction was clearly erroneous, and its effect could not be otherwise than prejudicial to the plaintiff.

The court also instructed the jury that "if you find from all the evidence in this case that after the contract in evidence was signed, the plaintiff and defendant agreed that certain changes should be made in the manner in which the conveyors in question were to be constructed or erected, and that new blue-prints were to be prepared by the plaintiff showing such changes, and were to be approved by the defendant, and if you further find from the evidence that the defendant refused to approve the blue-prints prepared by the plaintiff showing such changes, then you should find the issues for the defendant." We think this instruction was misleading and should not have been given without some modification. It appears very clearly from the evidence that the changes thus mentioned were all agreed upon at the same time the contract was signed, and the changes agreed on were then and there marked in pencil upon the blueprint which was attached to the contract. While it is true that the evidence also shows that plaintiff agreed to send the defendant a corrected copy of the blueprint and that the plaintiff caused such a corrected copy to be prepared and sent to the defendant, yet there was no claim on defendant's part that the revised blueprint did not correctly show the changes which had been agreed upon, and the record shows that Mr. Boetter made no objection whatever to

542 . Appellate Courts of Illinois.

Alvey-Ferguson Co. v. Ernst Tosetti Brew. Co., 178 Ill. App. 536.

the corrected copy of the blueprint, but laid it aside without any examination or investigation, and based his telegraphic request or direction not to ship the goods upon other and entirely different grounds, viz: that he "did not like the *system,*" had "come to the conclusion that the *system* would not suit." The instruction as given was not at all applicable to the facts as related by defendant's own witnesses.

As the case must be tried again on account of these errors, it is only fair to the parties that we should briefly state our views upon some of the other questions which have been raised and discussed in the briefs of counsel, and will probably be raised upon the second trial. Appellee's counsel urge that there is a well established principle of the law to the effect that a vendee in an executory contract for the manufacture and delivery of goods has the right to repudiate his contract at any time before the goods are fully manufactured and delivered, by giving notice to that effect, and that if he gives such a notice, it then becomes the duty of the vendor to go no further in the performance of his part of the contract, the vendee in such case being answerable, not for the contract price of the goods, but for such damages as the vendor has sustained in consequence of the vendee's breach of contract. Many cases will be found in which such a rule is stated without apparent qualification. Clark v. Marsiglia, 1 Denio, 317; Danforth v. Walker, 37 Vt. 239; Davis v. Bronson, 2 N. Dak. 300; Moline Scale Co. v. Beed, 52 Iowa 307; Collins v. Delaporte, 115 Mass. 159; Butler v. Butler, 77 N. Y. 472; Thorn v. Danzinger, 50 Ill. App. 306; Horr v. Slavik, 35 Ill. App. 140. An examination of these cases, however, will show that most, if not all, of them proceed upon the theory that an explicit notice given by a vendee in an executory contract to the vendor to stop performance is equivalent to an absolute physical prevention of performance, and therefore, *ipso facto,* constitutes *a present breach* of the contract, even though the time

for performance has not arrived. This theory is given as the underlying principle of such cases in 2 Mechem on Sales, pp. 946, 947, sec 1092. The Supreme Court of Illinois, however, has several times held that the giving of a notice by the vendee to stop performance, or a notice that the vendee will refuse to accept the goods sold if tendered, does not, *per se, create a breach* of the contract, *except at the election of the vendor.* In such cases it is held that the vendor may elect to treat the notice as a breach of the contract and sue at once for damages occasioned thereby, *but he is not bound to do so.* He may, if he prefers, elect to keep the contract alive notwithstanding such notice, being ready and able at all times, in such case, to perform his part of the contract. Kadish v. Young, 108 Ill. 170; John A. Roebling's Sons' Co. v. Lock Stitch Fence Co., 130 Ill. 660; Lake Shore & M. S. R. Co. v. Richards, 152 Ill. 59.

In Kadish v. Young, *supra,* the authorities upon this question are cited and analyzed in an elaborate opinion by Mr. Justice Scholfield, and the conclusion is reached, following what is said to be the "well settled doctrine of the English courts," that "a buyer cannot thus create a breach of contract upon which the seller is bound to act." On page 182 of the opinion, it is said: "If a party is not compelled to accept the declarations of the other party to a contract that he will not perform it, as a breach, it must logically follow that he is under no obligation to regard that declaration for any purpose. * * * *Nothing would seem to be plainer than that while the contract is still subsisting and unbroken, the parties can only be compelled to do that which its terms require;"* and on page 181, it is said: "*After breach* of a contract, as before herein intimated, we do not, at present, question that it is the duty of the party entitled to damages to do what he reasonably may, without prejudice to his rights, to lighten the burden falling on his adversary." (Italics ours.)

John A. Roebling's Sons' Co. v. Lock Stitch Fence Co., *supra,* was a case where, after a contract for the manufacture and delivery of fence wire had been partly performed, the buyer notified the seller not to make any further shipments. The seller disregarded the notice, shipped the remainder of the wire, and upon the refusal of the buyer to receive it, sold it at auction and then brought suit for the difference between the contract price and the amount realized at the auction sale. The trial court instructed the jury that after receiving the notice not to ship any more of the wire, "the plaintiff had no right to proceed further in the performance of the contract, unless such notice should be withdrawn by the defendant." The Supreme Court held that this instruction was manifestly erroneous, and reversed the case for that reason, saying. "One party to a contract cannot, by simply refusing to carry out his part of it, compel the other party to rescind it. The latter has a right to keep it alive notwithstanding such refusal. This doctrine was clearly announced in Kadish et al. v. Young et al., 108 Ill. 170."

In Lake Shore & M. S. R. Co. v. Richards, *supra,* it is said (p. 80): "It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover, under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." To the same effect are Chalstran v. Board of Education, 244 Ill. 475, and Waggeman v. Janssen, 74 Ill. App. 38. If the injured party has the right of election, it would be manifestly

absurd to say that the other party may control the exercise of that right, or may insist that the right shall only be exercised in such a manner as to be of no avail to the party injured.

Whatever may be the rule in other jurisdictions upon this question, the cases above cited would seem to clearly establish the rule in this state to be that one party to a contract cannot create a breach merely by giving notice that he does not intend to be bound by it.  Under these authorities, a mere notice of an intended breach of a contract is not, of itself, a breach of the contract, though it may become so if accepted and acted upon as such by the other party.  If not so accepted and acted upon, the notice remains only a matter of intention, and may be withdrawn at any time before performance is in fact due.  A similar rule seems to be recognized in Pennsylvania.  Zuck v. McClure, 98 Pa. St. 541; Unexcelled Fire-Works Co. v. Polites, 130 Pa. St. 536.  In the present case, appellant elected to treat the notice given by appellee as inoperative, and refused to consider it as a breach of the contract.  Appellant had the right to so elect, and in our opinion, in view of the fact that the contract expressly required the conveyors to be constructed within sixty days, appellant had the further right after such election to proceed with the work of construction, in order that it might be ready and able at all times during the stipulated sixty days to perform its part of the contract.  We are inclined, however, to agree with appellee's counsel that appellant cannot recover the purchase price, as such, upon the *indebitatus* count, but that it must recover, if at all, upon the counts alleging damages for a breach of the contract in refusing to accept the goods when tendered.

For the reasons indicated, the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*