## August Kieper, Appellee, v. American Coal & Supply Company, Appellant.

### Gen. No. 19,297.

1. ACCORD AND SATISFACTION, § 4*—*when check not accepted as full payment.* In an action to recover the contract price of wood of which the defendant refused to accept delivery, *held* under the facts of the case that plaintiff's acceptance of a check from defendant could not be considered as having been received in full payment of plaintiff's demand.

2. SALES, § 330*—*when instruction authorizing recovery of contract price misleading.* In an action to recover the contract price of wood sold to defendant on his refusal to accept delivery, an instruction given for plaintiff which, in effect, told the jury that if they believed from the evidence that at the time plaintiff received defendant's directions not to deliver the balance of the wood, plaintiff was able, ready and willing to deliver the same, then plaintiff was entitled to recover the full contract price less payments and cost of hauling, *held* misleading where there was evidence showing that plaintiff had sold some of the undelivered wood.

3. COURTS, § 100*—*jurisdiction of County Court.* County Court is not without jurisdiction to hear a cause and enter a judgment by reason of the fact that an additional count in the declaration claimed that defendant owed plaintiff more than $1,000, it appearing that the summons served on defendant stated the claim to be for $1,000, and the *ad damnum* clause in plaintiff's original declaration the damages were also placed at $1,000, and it not appearing that the *ad damnum* was increased in amount.

Appeal from the County Court of Cook county; the Hon. ISAAC HUDSON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed and remanded. Opinion filed May 21, 1914.

Statement by the Court. On September 27, 1912, August Kieper commenced an action in *assumpsit* in the County Court of Cook county against the American Coal & Supply Company, a corporation, defendant. The original declaration consisted of the common counts. The *ad damnum* was $1,000. The writ which was served on the defendant also stated that the damages claimed by the plaintiff was $1,000. On November 7, 1912, by leave of court, plaintiff filed an addi-

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

tional count, in which it was alleged, in substance, that on August 22, 1911, plaintiff and defendant entered into a written contract (a copy of which was appended to the count and marked "A") by which plaintiff agreed to "cut, haul and deliver" to defendant "500 cords of four foot, good, sound maple and birch wood, f. o. b. cars at Florence Station, Wisconsin, for the sum of $3.25 per cord, shipments to commence as soon as the sleighing conditions would permit but not earlier than December 1, 1911, and defendant agreed to pay for said wood the said sum per cord, payments to be made for each car as received by defendant; that plaintiff delivered to defendant 204 cords of said wood which were accepted by defendant; that plaintiff was "ready, willing and able to deliver" the balance of the wood, viz., 296 cords, but that defendant "refused to accept said wood and directed plaintiff not to ship said wood;" that the total purchase price of said wood was $1,625 and that defendant paid to plaintiff on account of said wood the sum of $39 on January 16, 1912; $156 on February 10th; $200 on March 5th; and $158.08 on May 13, 1912, or the total amount of $553.08; and "plaintiff says there is now due and owing to plaintiff from defendant the sum of $1,071.92, wherefore he brings suit." The defendant filed a plea of the general issue and gave notice of a claim of set-off or recoupment in the amount of $109.92, and also of the defense of accord and satisfaction, in that on, towit, May 13, 1912, plaintiff "accepted of the defendant $158.08 in full satisfaction and discharge of the said several promises and of all the sums in said declaration mentioned." The case was tried before a jury who returned a verdict in favor of plaintiff, assessing plaintiff's damages at the sum of $871.92, upon which verdict the court entered judgment against the defendant. Plaintiff seeks by this appeal to reverse the judgment.

The material facts as disclosed from the evidence are as follows: Shortly after the written contract

mentioned in the declaration was executed, plaintiff commenced cutting wood on "his place," which was some distance from Florence Station, and during the fall of 1911 and the succeeding winter about 1,200 cords of wood were cut. Prior to February 23, 1912, plaintiff had cut, hauled and shipped to defendant 204 cords of maple and birch wood. This wood had been loaded at Florence Station into cars—17 in number with about 12 cords in each car. About this time, plaintiff received from defendant a letter, dated February 23, 1912, as follows: "Please do not ship any more wood. The plant whom we have been supplying has shut down, and asked us to stop shipping. Please be governed accordingly." Plaintiff testified, in substance, that after he received this letter he ceased making any further shipments of wood to defendant; that at this time, in addition to the 204 cords of wood already shipped to defendant, he had hauled and piled near the side track at Florence Station, 96 cords which he had intended, prior to the receipt of said letter, to ship to defendant under said contract; that "*some* of the wood is on the ground there yet," but how much he could not say, as he had sold some of it; that at the time of the receipt of said letter he had received $195 from defendant as a payment on account, that he subsequently received from defendant a check for $200 on or about March 5, 1912, and a check for $158.08 on or about May 13, 1912, both of which checks he cashed, and that all of these payments amounted to the total sum of $553.08; that it cost him $1 per cord to haul the wood from where it was cut to the railroad track, but that he had not at any time hauled the balance, 200 cords, of the 500 cords mentioned in the contract to the railroad track at Florence Station, on defendant's account. The defendant introduced in evidence a letter by plaintiff to defendant, dated March 6, 1912, in which plaintiff wrote in part: "I received your letters. Thank you very much for the check. * * * When

you notified me that I should ship no more wood I had lots piled alongside of the track. *I sold some to Kramer Bros.* at Iron Mountain and got about six cars left. Could you use it now or a month from now without docking. Its the same kind of wood as I have shipt to you." Defendant's witness, C. J. Boedeker, general manager of the defendant company at Chicago, testified that on May 13, 1912, he mailed to plaintiff a check of the defendant, payable to plaintiff's order for $158.08, and that with the check he inclosed a statement of account and a letter to plaintiff written by the witness in longhand. The check was introduced in evidence, on the back of which appeared the signature of plaintiff and indorsement showing that the check had been paid through the Chicago Clearing House. Nowhere on the check were there any words "in full," or "in full of account," or words of similar import. Plaintiff, while on the stand, testified that when he received this check he also received a statement but was not sure that he received a letter. The statement was produced by the defendant on notice, but the court refused to admit the same in evidence. The letter was not produced and the witness Boedeker, testified that he had not kept a copy of the same. The court allowed him to testify as to its contents as follows: "I wrote and told him that we enclosed a statement of his account and called his attention to the shortages and debit charges, which added together with the check, * * * balanced his account in full." The statement, which was refused admission, is contained in the bill of exceptions. It purports on its face to be a statement of account between plaintiff and defendant, in which defendant charges itself with the shipments of the 204 cords of wood to the amount of $663, and credits itself with previous payments aggregating $395, and with certain "shortages" and other "allowances" (itemized) aggregating $109.92, and with "check herewith" of $158.08, making the total credits also the sum of $663. No-

where on the statement are there any words to the effect that the said check is "in full" or "in full of account." The defendant also introduced in evidence a letter, dated May 20, 1912, from plaintiff to defendant, in which plaintiff wrote, in part: "I received the check for $158.08 as a part payment on what you owe me. I see you try to dock $109.92, which you have no right whatever to do. If the wood did not suit you, you had no business to take it. * * * If you want to settle with me for $75, I will call it square. * . * * I will wait till May 28th to get the $75 and if I don't get it by that time then I will give it to a lawyer."

EDWARD J. KELLEY, for appellant.

JULIUS C. GREENBAUM, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is contended by defendant's counsel that the acceptance by plaintiff of defendant's check of May 13, 1912, for $158.08, satisfied plaintiff's entire demand, and, hence, the judgment cannot be sustained. Counsel cites the cases of *Canton Union Coal Co. v. Parlin & Orendorff Co.*, 215 Ill. 244, and *Snow v. Griesheimer*, 220 Ill. 106. Under the facts as disclosed by the evidence, and even considering the statement (not admitted by the court) which was inclosed with the check we cannot say that the check in question was offered under such circumstances as to amount to a condition that, if accepted by plaintiff, it was to be received in full payment of plaintiff's claim or demand, or that the acceptance of said check by plaintiff should be given the effect contended for. The facts of the present case are different in essential particulars from the facts in the cases cited.

It is also urged that, under the theory of recovery adopted by plaintiff and in view of the testimony of

the plaintiff, the court erred in giving to the jury the following instruction:

"The jury are instructed if they believe from the evidence that the plaintiff and defendant entered into a contract for the purchase and sale of 500 cords of 4-foot, good, sound maple and birch wood, at the agreed price of $3.25 per cord, and if the jury further believe from the evidence that plaintiff delivered to the defendant 204 cords of wood of the kind and quality specified in the contract, and received for said wood the sum of $553.08, from the defendant, and if the jury further believe from the evidence that the plaintiff was able, ready and willing to deliver to said defendant the balance of said wood under said contract, amounting to 296 cords, but that the defendant directed and requested the plaintiff not to deliver or ship said 296 cords, then the jury are instructed that the plaintiff is entitled to recover from the defendant the value of said 204 cords, less whatever sum or sums are shown by the evidence to have been paid by the defendant to the plaintiff, and the further sum of $3.25 per cord for the remaining 296 cords, less whatever sum or sums it would have cost the plaintiff to deliver said 296 cords to the railroad track as shown by the evidence, but not more than the sum of one thousand ($1,000.00) dollars. Provided you further believe that no compromise proposition was made and accepted."

In *Bagley v. Findlay,* 82 Ill. 524, 525, it is said (italics ours):

"When a vendee of goods, sold at a specific price, refuses to take and pay for the goods, the vendor *may store* the goods for the vendee, give him *notice* that he has done so, and then recover the full contract price, *or* he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of delivery, * * * *or* the vendor may, giving notice to the vendee, proceed to sell the goods, in their then condition and quantity, to the best advantage, and recover of the vendee the loss, if the goods fail to bring the amount of the contract price."

In *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59, 80, it is said (italics ours):

"It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an *election* to pursue either of *three* remedies: He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or he may *keep the contract alive* for the *benefit* of *both* parties, being *at all times* himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover, under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. In the latter case the contract would be continued in force for that purpose."

In *Osgood v. Skinner,* 211 Ill. 229, 239, it is said (italics ours):

"If there has been no delivery of personal property, the seller who has *offered performance on his part* may consider the property as the purchaser's, and may *either* sell it and sue for the unpaid balance of the price, *or* may hold it *subject to the call or order* of the purchaser and recover the whole price.   *   *   * The seller often chooses to retain the title to the property and recover the difference between the value and the contract price, but if the property remains in his hands he is *not obliged* to consider it as his own."

In the case of *Alvey-Ferguson Co. v. Ernst Tosetti Brewing Co.,* 178 Ill. App. 536, 543, it was said in an opinion of this court:

"The Supreme Court of Illinois, however, has several times held that the giving of a notice by the vendee to stop performance, or a notice that the vendee will refuse to accept the goods sold if tendered, does not, *per se,* create a breach of the contract, except at the election of the vendor. In such cases it is held that the vendor *may elect* to treat the notice as a breach of the contract and sue at once for damages occasioned thereby, but he is *not bound* to do so. He

may, if he prefers, elect to keep the contract alive notwithstanding such notice, being ready and able *at all times,* in such case, *to perform his part* of the contract.''

In the present case, plaintiff, by the written contract, agreed to ''cut, haul and deliver on board cars'' at Florence Station 500 cords of wood for $3.25 per cord, and it appears from the evidence that when he received defendant's letter of February 23, 1912 directing him not to ship any more wood, he had already shipped 204 cords to defendant, and that 96 other cords had been hauled to Florence Station and were piled near the sidetrack ready for shipment, and that the balance, 200 cords, had not yet been taken out of the woods where said cords had been cut. Under the additional count of the declaration, plaintiff sought to recover the full contract price of the 500 cords, less payments received, and the case was prosecuted on that theory. It further appears that plaintiff, upon the receipt of the letter of February 23rd, ceased making any further shipments of the wood but it does not appear that he notified defendant that he elected to ''keep the contract alive for the benefit of both parties,'' or that he took any steps to store or properly protect the undelivered cords of wood for defendant notifying the latter that he had done so, or that he advised defendant that the undelivered cords were ''subject to the call or order'' of defendant. On the contrary, it appears from plaintiff's letter of March 6th that plaintiff wrote defendant that he had sold some of the wood ''to Kramer Bros. at Iron Mountain,'' that he had about ''six cars left'' (about 72 cords), and inquired if the defendant could use the same then or within a month. This certainly does not tend to show that plaintiff was *''at all times* himself ready and able to perform.''

We are of the opinion that, under the facts in evidence, the giving of the instruction above set forth constituted error prejudicial to the defendant. The instruction was misleading. It in effect told the jury

that if they believed from the evidence that at the time plaintiff received defendant's directions not to deliver the remaining 296 cords, plaintiff was able, ready and willing to deliver said 296 cords, then plaintiff was entitled to recover the full contract price, less payments and the cost of hauling the unhauled cords, even though subsequently and *at all times* plaintiff was not able to deliver said remaining 296 cords. By this instruction the jury, in considering the same in connection with the testimony, might have inferred that plaintiff might recover of defendant the full contract price, less payments and said cost of hauling, even though plaintiff, after receiving defendant's said directions, had himself sold some of the undelivered cords of wood and did not consider said cords as belonging to the defendant and subject to its call or order. Because of the giving of this instruction we think the judgment must be reversed and the cause remanded for a new trial.

And in view of this decision it may not be out of place for us to say that we do not think that the County Court was without jurisdiction to hear the case and enter a judgment, as urged by counsel for defendant. The argument is, that by section 95 of chapter 37 of the Illinois Statutes (J. & A. ¶ 3131), the County Court is given jurisdiction in all that class of cases wherein justices of the peace now have or may hereafter have jurisdiction, where the *"amount claimed* or the value of the property in controversy shall not exceed $1,000,"* and that it appears from plaintiff's additional count that plaintiff claimed there was due and owing him by the defendant "the sum of $1,071.92," which is an amount in excess of the jurisdiction of said court. It is to be noticed that in the writ of summons served upon the defendant the damages claimed by the plaintiff were stated to be $1,000, and in the *ad damnum* clause in plaintiff's original declaration the damages were also placed at $1,000, and it does not appear that this *ad damnum* was increased in amount. If the plaintiff thought that at

the time he brought suit defendant owed him more that $1,000, it was his privilege, if he chose to release and forgive a part of the debt. *Raymond v. Strobel,* 24 Ill. 114, 115; *Carpenter v. Wells,* 65 Ill. 451; *Ellis v. Snider,* Breese 336. When he brought suit in said County Court he claimed damages in the sum of $1,000, the limit of the court's jurisdiction. In 1 Cyc. 763, the *ad damnum* is said to be "that part of the plaintiff's pleading in which he alleges the amount for which he *claims* recovery." And the jurisdiction of the County Court depends upon the amount claimed by the plaintiff. *Young v. Mueller Bros. Art. & Mfg. Co.,* 124 Ill. App. 94, 96; *Hull v. Webb,* 78 Ill. App. 617, 619; *People v. Summers,* 16 Ill. 173, 174. And in all actions sounding in damages, as *assumpsit* and tort, the amount claimed is to be ascertained by the *ad damnum. Cole v. Hayes,* 78 Maine, 539, 541; *Hapgood v. Doherty,* 8 Gray (Mass.) 373, 374; *Walcott v. Holcomb,* 24 Ill. 331; *Wright v. Smith,* 76 Ill. 216.

The judgment of the County Court is reversed and the cause remanded.

*Reversed and remanded.*